***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives or amend the Opinion and Award except for the following modifications.
 ***********
The undersigned finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to the Workers' Compensation Act.
2. On April 15, 1998, an employer-employee relationship existed between the parties.
3. On April 15, 1998, defendant was a duly qualified self-insured.
4. Plaintiff's average weekly wage is $591.01.
5. Plaintiff alleges that he sustained an injury to his neck and head arising out of and in the course of his employment with defendant-employer on April 15, 1998.
6. Plaintiff claims that he is entitled to weekly compensation payments from April 15, 1998 to the present for said injuries with credit being given to defendant for benefits paid. Plaintiff claims temporary partial disability benefits from and after the date that he returned to work on limited duty on July 14, 1999. Plaintiff also claims continued medical care and treatment as provided by the Act as needed for his injuries.
7. The depositions of Dr. Greg Motley and Dr. Sean Maloney were submitted and received into the evidentiary record.
8. A packet of medical records including records from Dr. Courtney, Dr. Motley, Dr. Huffstutter and Dr. Maloney were submitted and received into the evidentiary record. Additional records of Dr. Huffstutter were stipulated into evidence by letter dated January 23, 2002.
9. Plaintiff contends that the issues to be addressed before the Commission are:
 (a) Whether plaintiff suffered a compensable left shoulder, head and neck injury arising out of and in the course of his employment with defendant-employer on or about April 15, 1998?
 (b) If so, to what compensation benefits is he entitled as a result of said injuries?
8. Defendant contends that the issues to be addressed before the Commission are:
 (a) Is plaintiff entitled to temporary partial disability benefits as a result of the compensable accidental injury of April 15, 1998?
 (b) If plaintiff is entitled to temporary partial disability benefits, has plaintiff elected benefits pursuant to N.C.G.S. § 97-30 as a result of his accidental injury?
 (c) Has appropriate medical care been made available to plaintiff, including appropriate testing as recommended by plaintiff's authorized treating physicians?
 (d) If plaintiff is not entitled to benefits pursuant to N.C. Gen. Stat. § 97-30, what disability has he experienced pursuant to N.C. Gen. Stat. § 97-31?
 ***********
Based upon the evidence of record and any reasonable inferences, the undersigned finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 65 years old, had been married 33 years and had completed the ninth grade. In October 1985, plaintiff began his employment as a "picker" with defendant-employer who produces, packages and ships milk, water and juice. After about a year and a half, plaintiff began working as a "switcher" and continued in this position where his duties included using a tractor to move trailers to doors to be loaded, making sure the trailers were clean, taking returned milk off of the trailers and occasionally moving palettes. The returns were packaged 4 gallons to a case or 9 half gallons to a case, weighing 32 to 36 pounds respectively. The palettes weighed approximately 80 to 100 pounds. Plaintiff was required to open and close the rear trailer doors, which would sometimes stick. Plaintiff also used a hose to clean the inside of the trailers but was not required to scrub them or use any brushes. Plaintiff's working hours were 2:00 p.m. until 10:30 p.m. Plaintiff began each day by taking an inventory of what was in each trailer. Afterwards, plaintiff would begin moving trailers using a tractor.
2. On April 15, 1998, plaintiff experienced a compensable injury by accident when he opened a trailer door and palettes fell out, striking plaintiff on the head, as well as on the left shoulder. Plaintiff was taken to ProMed Asheville where he was treated for a head laceration, given head injury information and released to light duty. On April 21, 1998, plaintiff was released to regular duty work but was instructed to keep his wound completely dry. Plaintiff had experienced some headaches but showed no warning signs of a head injury.
3. On April 26, 1998, plaintiff was seen again at ProMed and reported left shoulder difficulty since resuming normal duties. X-rays of plaintiff's left shoulder were taken revealing an inferior spur at the humeral head. Plaintiff was given a sling and restricted from upper left arm use. When plaintiff's shoulder did not improve, he was referred to an orthopaedic surgeon, Dr. Greg Motley.
4. Plaintiff was first evaluated by Dr. Greg Motley on May 18, 1998. Dr. Motley diagnosed acute left rotator cuff injury, with a possible tear. Dr. Motley confirmed the suspected tear by a left shoulder MRI scan on July 31, 1998. Consequently, plaintiff underwent an acromioplasty and rotator cuff repair on August 27, 1998. After surgery plaintiff improved significantly and reported to Dr. Motley that his pain was greatly reduced and that he was able to sleep at night.
5. When plaintiff returned to Dr. Motley on December 9, 1998, plaintiff reported no pain in his shoulder, but had occasional aching after physical therapy. At the evaluation of December 9, 1998, Dr. Motley released plaintiff to return to limited work.
6. On February 22, 1999, Dr. Motley released plaintiff from his care and assigned permanent work restrictions. Plaintiff is able to drive and lift any amount of weight below his chest line and in front of him, but is restricted from lifting above the chest line. However, Dr. Motley later clarified that plaintiff can perform some overhead lifting, but no repetitive overhead lifting. According to Dr. Motley, plaintiff can function in a job with minor restrictions regarding overhead activity.
7. In May of 1998, when plaintiff began treating with Dr. Motley for his shoulder, plaintiff was also experiencing headaches. As a result, Dr. Motley referred plaintiff to a neurologist, Dr. William Huffstutter.
8. Dr. Huffstutter diagnosed tension vascular headaches, post-concussion syndrome and situational depression. Dr. Huffstutter provided care for these problems through May 14, 1999, at which point Dr. Huffstutter's found post-concussion syndrome, which was improving and secondary depression, which was resolving. Dr. Huffstutter released plaintiff to return on an as-needed basis with no work restrictions noted.
9. On July 14, 1999, plaintiff returned to work for defendant as a relief switch operator. Plaintiff contacted Joseph Hamlin, defendant's human resources director, regarding a part-time return to work. Plaintiff did not request to return to his regular job, but instead requested limited hours due to his age-based social security benefits. Plaintiff had begun to receive these benefits after his work-related injury but before his return to work.
10. As a result of plaintiff's request, he was not placed in his regular job, but was instead placed in the position of "relief switcher". Both Mr. Hamlin and Keith Collins, operations manager, indicated that plaintiff's relief switch operator job is similar to the full-time regular switch operator position. However, as a relief operator, plaintiff does not work a full day. Jesse Hatten, who no longer works for defendant, performed the position of relief operator previously.
11. Plaintiff indicated at the hearing before the Deputy Commissioner that since he has returned to work part-time, he moves the trailers and cleans them but performs little to no lifting. Plaintiff testified that Dr. Motley restricted his lifting to 20 pounds and restricted him from working first shift. However, this is contrary to Dr. Motley's records and deposition testimony and is therefore given little weight. Also, plaintiff indicated that he does not open and close the trailer doors as often. Furthermore, plaintiff does not keep inventory, which is kept instead by the full-time switchers. However, plaintiff's duties are essential duties to defendant's business and any limitations are not based on plaintiff's medical restrictions.
12. Neither Mr. Hamlin nor Mr. Collins has observed plaintiff undergo any personality change and plaintiff has not made any physical complaints regarding his job duties. There have been no difficulties at work as a result of plaintiff's headaches or any alleged memory losses. Furthermore, plaintiff's overall work performance and relationship with co-employees has been good since his return to work. In fact, plaintiff has received two hourly pay rate increases since returning to work part-time for defendant and currently earns more per hour than prior to the injury.
13. After returning to work, plaintiff expressed to Mr. Hamlin concerns about earning too much money that might result in penalties due to his social security payments.
14. Plaintiff has continued to work as a relief switch operator since he returned to work in July 1999. Plaintiff began working 20 hours a week and at the time of the hearing was working approximately 25 hours a week. Plaintiff now works 1:00 p.m. until 5:00 or 6:00 p.m.
15. On June 20, 2001, over two years after the injury, plaintiff returned to Dr. Motley with a new complaint of bilateral neck pain. With respect to plaintiff's left shoulder, Dr. Motley noted that plaintiff was doing very well. Dr. Motley felt that plaintiff should continue his activities, given the condition of plaintiff's shoulder in June of 2001. Dr. Motley placed no new restrictions on plaintiff.
16. On June 27, 2001, plaintiff was seen again by Dr. Huffstutter, who had released plaintiff to return on an as needed basis approximately a year earlier in May 1999. Plaintiff's depression secondary to his post-concussion syndrome had resolved. Plaintiff complained of memory problems and indicated that he has trouble while working due to difficulty remembering trailer numbers and how to back a trailer into a particular spot. Dr. Huffstutter diagnosed deterioration in cognitive abilities with poor short-term memory and calculating abilities with probable tension headaches. An MRI, an EEG and metabolic studies were performed. All studies were normal except that plaintiff was found to be borderline diabetic. Plaintiff was prescribed Exelon for his complaints of memory loss. However, on September 24, 2001, the Exelon was discontinued, as plaintiff's memory had not improved. Plaintiff expressed to Dr. Huffstutter that he continued to work and was able to function at work but that he has to be reminded of tasks occasionally. Dr. Huffstutter diagnosed mild dementia following head trauma, which had stabilized. Dr. Huffstutter again released plaintiff to return on an as needed basis and did not provide any work restrictions.
17. On August 15, 2001, plaintiff began physical therapy for his neck complaints and headaches and continued treating with the therapist until February 18, 2002. Plaintiff made no mention of shoulder complaints during his therapy and complained of headaches with less frequency.
18. Since plaintiff did not present with bilateral neck pain prior to June 20, 2001 and the onset of plaintiff's symptoms were distant from his injury, Dr. Motley could not relate plaintiff's neck pain complaints to the April 15, 1998 injury. Furthermore, any opinion by Dr. Maloney to the contrary is based on an inaccurate assumption as to the length of delay in onset of plaintiff's neck complaints. Accordingly, the greater weight of the evidence fails to demonstrate that plaintiff's bilateral neck complaints are causally related to the injury by accident of April 15, 1998.
19. Dr. Motley did not assign a rating to plaintiff's left shoulder or arm. However, Dr. Maloney found that plaintiff sustained a ten percent (10%) permanent partial impairment to his arm as a result of the April 15, 1998 injury.
20. Plaintiff chose to return to work performing a similar job to the one he was performing before the injury in order that his hours could be reduced. Although plaintiff may perform less lifting, the lifting duties of his original job are in compliance with the restrictions prescribed by his treating physician Dr. Motley and plaintiff is not restricted from work with regard to his post-concussion syndrome. Furthermore, none of plaintiff's physicians have assigned limitations as to the number of hours which plaintiff can work. In addition, Dr. Maloney, plaintiff's second opinion physician, felt that plaintiff was benefited by his return to work. Furthermore, neck pain complaints which plaintiff may now have are unrelated to his injury by accident and there is no evidence of record that plaintiff has been restricted by his treating physician with regard to his neck complaints.
21. The relief switch operator job is comprised of essential functions necessary in the performance of defendant's daily business. In addition, it is a position, which was occupied by another employee before plaintiff. Although the position is not available full-time and somewhat lighter than plaintiff's original job as a switcher, the greater weight of the evidence demonstrates that plaintiff voluntarily chose this part-time position and is not restricted from performing his regular job duties as a result of any condition caused by his April 15, 1999 injury by accident. Therefore, the greater weight of the evidence demonstrates that plaintiff elected to reduce his hours probably as a result of his age-based social security benefits and later developed unrelated neck problems.
22. Plaintiff and his wife both testified that he has memory difficulties. Plaintiff's wife described the difference in plaintiff as "night and day". However, plaintiff's wife merely indicated that plaintiff may forget an item at the grocery store and that plaintiff did not feel like performing household chores. Furthermore, plaintiff's wife indicated that plaintiff had difficulty sleeping due to neck pain, which is a condition unrelated to plaintiff's injury by accident.
23. The greater weight of the evidence of record demonstrates that plaintiff has not experienced any diminution in his wage earning capacity as a result of the injury by accident after his July 14, 1999 return to work.
24. Plaintiff has reached maximum medical improvement with respect to his left shoulder injury sustaining a ten percent (10%) permanent partial impairment to his arm.
25. Plaintiff has reached maximum medical improvement with respect to his post-concussion syndrome and has sustained a mild impairment. Regardless, plaintiff is not restricted from work activities due to any impairment. Moreover, plaintiff's job performance for defendant has not been affected by any memory difficulties described by plaintiff or his wife. Any evidence to the contrary is given little weight.
26. Plaintiff's average weekly wage is $591.01, yielding a weekly compensation rate of $394.03.
 ***********
The foregoing findings of fact and conclusions of law engender the following additional:
 CONCLUSIONS OF LAW
1. The greater weight of the evidence of record fails to demonstrate that plaintiff's bilateral neck complaints are causally related to the injury by accident of April 15, 1998. Therefore, plaintiff is entitled to no benefits for his neck condition. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has suffered no diminution of wage earning capacity following his July 14, 1999 return to work and is therefore not entitled to any temporary partial disability as a result of his injury by accident. N.C. Gen. Stat. § 97-30.
3. Plaintiff is entitled to permanent partial disability benefits for his ten percent (10%) impairment to his left arm or shoulder in the amount of 24 weeks at a rate of $394.03 per week. N.C. Gen. Stat. §97-31.
4. Plaintiff is entitled to permanent partial disability benefits for his post-concussion syndrome and deterioration of his cognitive abilities in the amount of $3,000.00. N.C. Gen. Stat. § 97-31.
5. Plaintiff is entitled to reasonably necessary medical treatment for his left shoulder and post-concussive injuries for so long as such treatment tends to effect a cure, provide relief or lessen the period of plaintiff's disability. N.C. Gen. Stat. §§ 97-25; 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to a reasonable attorney's fee, defendant shall pay plaintiff for his ten percent (10%) permanent partial disability to his left arm for 24 weeks at a rate of $394.03 per week.
2. Subject to a reasonable attorney's fee, defendant shall pay plaintiff permanent partial disability benefits for his post-concussion syndrome and deterioration of his cognitive abilities in the amount of $3,000.00.
3. Defendant shall pay all reasonably necessary medical expenses for treatment of plaintiff's left shoulder and post-concussive injuries for so long as such treatment tends to effect a cure, provide relief or lessen the period of plaintiff's disability.
4. A reasonable attorney's fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from the sums due plaintiff and paid directly to plaintiff's counsel.
5. Defendant shall pay for expert witness fees in the amount of $175.00 to Dr. Maloney and $350.00 to Dr. Motley, if not already paid.
6. Defendant shall bear the costs due the Commission.
This the 31st day of January, 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/________________ RENEE C. RIGGSBBEE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER